# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| MATTHEW D. CLARK,<br>    Plaintiff,<br><br>       v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>)   CAUSE NO.: 2:15-CV-386-JEM<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Matthew Clark on October 5, 2015, and Plaintiff's Opening Brief [DE 15], filed by Plaintiff on March 2, 2016. Plaintiff asks the Court to reverse and remand for further proceedings the Social Security Administration Commissioner's decision finding him not disabled as defined in the Social Security Act. The Commissioner has responded, and Plaintiff has replied.

### I. Background

#### A. Procedural history

Plaintiff initially applied for Disability Benefits Insurance and Supplemental Security Income in 2007, alleging that he had become disabled in 2003. His application was denied both initially and on reconsideration. In 2009, Administrative Law Judge Paul Armstrong held a hearing and concluded that Plaintiff was not disabled as defined in the Social Security Act. The Act defines disability as the inability to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last continuously for at least 12 months.

The Appeals Council denied review in 2011, and Plaintiff appealed to the United States District Court for the Northern District of Indiana. In 2013, Magistrate Judge Paul Cherry remanded the case for further proceedings after finding that the ALJ had failed to draw the required logical bridge from the evidence to his conclusions.

On remand, ALJ Ramona Scales held a new hearing, and in December 2014 she denied Plaintiff's disability claim. The Appeals Council denied review in August 2015, making the ALJ's decision the final decision of the Commissioner. Plaintiff now appeals again.

The parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case, giving this Court jurisdiction to decide this case under 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**B.** **Facts**

The facts leading into 2009 are detailed at length in Judge Cherry's 2013 opinion, so a brief summary will suffice. Plaintiff was born on May 3, 1979, making him 37 years old at the time of this decision. He has a high school education. He worked for a time as a paper machine operator for a newspaper company, but he left that job after injuring his back in 1999. He later worked as a car wash attendant, but he left that job because he could not stand for long periods. He worked for a couple of weeks as a telemarketer, but he left that job because he could not sit for 8 hours per day. He also worked briefly at a pizza restaurant and as a door-to-door salesman for a home improvement company.

In 2003, Plaintiff began seeking treatment for chronic lower back pain and severe migraine headaches. In 2004, he was hospitalized for intractable lower back pain and later that year underwent back surgery. The pain continued, and Plaintiff began repeatedly visiting the

emergency room with complaints of severe migraine headaches and lower back pain. He began taking pain medicine, and treatment continued into 2007, when testing confirmed a diagnosis of multiple sclerosis. Plaintiff began using a cane at all times.

In 2007, Plaintiff began abstaining from marijuana and cocaine, which he had used in the past. But in 2013, Plaintiff used heroin to try to commit suicide. This was his second suicide attempt, the first having come in 2004.

Plaintiff has not worked since 2009. He has two children from his first marriage, both of whom live with their mother. Plaintiff and his second wife have three-year-old daughter, who lives with them.

At the 2014 hearing, Plaintiff testified that he continues to suffer from lower back pain that "radiates down both legs, it's sharp, stabbing and it's numb in my legs." AR 763. Plaintiff rated his pain as usually an 8 on a 10-point scale, with 10 being the worst pain he could endure, and said that once every three months the pain reaches 10, preventing him from getting out of bed. AR 766. With pain medicine, Plaintiff said, the pain can drop to 6. AR 767. "I'm just constantly numb," Plaintiff told the ALJ. "[C]onstantly in pain, constantly weak and tired and . . . my life is not joyful at all." AR 767.

Plaintiff testified that could stand for perhaps an hour total, and sit for 2 hours total, during an 8-hour workday. AR 758-59. He testified that he can walk only the length of a building before needing to sit down, and that without his cane he could not even walk across a parking lot. AR 756, 765. He testified that he can carry 5 pounds across a room, but that he would be afraid he would drop a bag weighing 10 pounds. AR 761. He testified that he can, with difficulty, do "a little bit" of buttoning and zipping, but that he usually cannot open jars. AR 768.

3

Plaintiff testified that he loses concentration easily, and that he can read for only 10 minutes before losing concentration. AR 747, 762. If he watches a TV show that lasts longer than an hour, Plaintiff testified, he will forget what happened at the beginning of the show. AR 762-63.

Plaintiff testified that his medication causes drowsiness, that he sleeps 12 hours a day, and that during his waking hours he lies down for an additional 6 hours, during some of which he naps. AR 759-60, 769. He testified that he can do light dishwashing for up to 10 minutes, but that his wife does all the shopping and childcare and that he just stays at home. AR 769.

Plaintiff's wife testified that Plaintiff sleeps 15 hours per day or more, that Plaintiff spends most of his time watching TV with his dad, and that Plaintiff has a poor memory and relies on her to remember doctor's appointments and to supervise his medication. AR 770-73.

A clinical psychologist, Dr. Richard Hutchison, testified as a medical expert. Dr. Hutchinson testified that Plaintiff's psychological conditions did not, alone or in combination, meet or equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. AR 776. Plaintiff's substance abuse and depression would periodically impose some functional limitations, Dr. Hutchison said, but Plaintiff's psychological difficulties posed no restrictions on the activities of daily living. AR 776-77. Dr. Hutchison also opined that Plaintiff has mild difficulty with social functioning and with maintaining concentration, persistence, or pace, and that Plaintiff's depression and anxiety affect him mildly. AR 777-78.

In Dr. Hutchison's view, Plaintiff would be best suited to a job with a limited amount of interaction with the general public and to a "routine" position not affected by constant change. AR 778-79. Dr. Hutchison opined that Plaintiff is not limited in his ability to understand,

remember, or carry out complex or detailed tasks, but Dr. Hutchison admitted that, if Plaintiff's memory is as bad as Plaintiff and his wife testified, then that could constitute a significant impairment in Plaintiff's ability to remember. AR 778-82. In that case, Dr. Hutchison opined, Plaintiff could do only simple, routine work. AR 782-83.

Dr. Steven Goldstein, a neurologist, opined that, although Plaintiff's impairments do not meet or equal the criteria for an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1, Plaintiff does have severe physical limitations. AR 786-89. Dr. Goldstein opined that Plaintiff could not sit for 2 hours out of an 8-hour workday, that Plaintiff could not stand and walk for 2 hours out of an 8-hour work day, that Plaintiff could only occasionally lift and carry 10 pounds, and that Plaintiff could occasionally but not repeatedly bend over to pick something up. AR 790. In Dr. Goldstein's view, Plaintiff is "less then sedentary" and cannot function for 8 hours per day. AR 789.

Dr. Goldstein opined that Plaintiff's limitations are caused at least in part by his narcotic medications and by being "deconditioned" by sleeping 15 hours per day and not doing anything. AR 789-91. Dr. Goldstein opined that Plaintiff has been treated "inappropriately," because "[l]arge amounts of narcotic medications in my view of a situation like this . . . actually make the pain worse and cause [patients] to be less functional." AR 789-90. "[I]f I were taking care of him I would stop his narcotics, I'd get him, you know, detoxed from that and I'd start a physical therapy program to build him up." AR 794.

Vocational Expert Richard Fisher testified that a person who shares many of Plaintiff's characteristics, who could perform only sedentary work, and who needed to use a cane to get around would not be able to perform Plaintiff's former jobs, but that other jobs exist that such a

5

person could perform. AR 802-03. Fisher also testified that if such a person needed to stand for 10 minutes per hour while using a cane, he would not be able to use both hands during that time, which would be too much time off-task from those jobs, but that 5 minutes standing with a cane per hour would be tolerable for an employer. AR 804-06.

### C. The ALJ's 2014 decision

In December 2014, the ALJ issued her decision. The ALJ followed the normal 5-step process: (1) determining whether the claimant is engaged in substantial gainful activity (if so, the claimant is not disabled and the analyis ends); (2) determining whether the claimant has a medically determinable impairment or combination of impairments that is "severe," meaning it significantly limits the claimant's ability to perform basic work activities (if not, the claimant is not disabled and the analysis ends); (3) determining whether the impairment(s) is so severe that it meets or equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (if so, the claimant *is* disabled and the analysis ends); (4) determining whether the claimant's residual functioning capacity (RFC) allows him to perform his past relevant work (if so, the claimant is not disabled and the analysis ends); and (5) determining whether the claimant is able to do any other work considering his RFC, age, education, and work experience (if so, the claimant is not disabled).

The ALJ concluded: (1) that Plaintiff had not engaged in substantial gainful activity since 2003; (2) that Plaintiff has severe impairments in the form of panic and major depressive disorders, migraine headache disorder, and degenerative changes to the lumbar spine; (3) that Plaintiff's impairments do not meets or equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1; (4) that Plaintiff has the residual functioning capacity to perform

sedentary work if permitted to use a cane, alternate standing for sitting for 5 minutes of each hour, with the work being simple, routine, and free of fast-paced production and quotas, and that given his RFC Plaintiff is not able to perform his past relevant work; and (5) that jobs exist in significant numbers that Plaintiff can perform. Consequently, the ALJ found that Plaintiff is not disabled.

## III. Analysis

### A. Standard

The Social Security Act authorizes judicial review of the final decision of the agency. The Court must accept the Commissioner's factual findings as conclusive if the findings are supported by substantial evidence. 42 U.S.C. § 405(g). Accordingly, the Court will reverse only if the ALJ's findings are not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quotation omitted).

The Court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its own judgment for the ALJ's. *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999)*; Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). So if an ALJ finds that a claimant is not disabled within the meaning of the Social Security Act, the question on review is not whether the claimant is, in fact, disabled, but whether the ALJ "use[d] the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013). "[I]f the

Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999).

At a minimum, the ALJ must articulate her analysis of the evidence to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ must "build an accurate and logical bridge from the evidence to [the] conclusion" so that the reviewing court can "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Id.* (quotation omitted); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions.").

**B. Issues**

Plaintiff raises two central arguments on appeal. First, Plaintiff says, the ALJ made an erroneous RFC determination and failed to build an accurate and logical bridge between the medical evidence and her RFC findings. Second, Plaintiff says, the ALJ made an erroneous credibility determination that was not supported by substantial evidence.

**1. The ALJ's RFC determination**

Plaintiff says that the ALJ's RFC finding directly contradicts, with inadequate explanation, the RFC assessment of Plaintiff's treating physician, Dr. Andrea Deleo. AR 1365-69. Dr. Deleo opined that Plaintiff could not perform even "low stress" jobs because he "must take frequent breaks" due to "constant pain." AR 1366. Dr. Deleo assessed that Plaintiff could walk only half a block without rest or pain, sit for 15 minutes before needing to stand, stand for

15 minutes before needing to sit, and would "frequently" need to take unscheduled 15-minute breaks throughout the workday. AR 1365-68. Dr. Deleo also opined that Plaintiff's impairments would cause him to miss work more than four days per month. AR 1368.

Accepting Dr. Deleo's findings would all but mandate a conclusion that Plaintiff's RFC leaves him unable to work: the vocational expert testified that Plaintiff could not perform any available jobs if he needed to stand for 10 minutes per hour, because using a cane while standing—as he must do—would tie up one of his two free hands, leaving him "off task" for too long each hour. AR 804-05. So if Plaintiff can sit or stand for only 15 minutes before needing to switch, as Dr. Deleo observed, he would be unable to work. Likewise, the vocational expert testified that if Plaintiff were to be absent more than one day per month, there would be no jobs available to him. So if Plaintiff would likely miss work more than four days per month, as Dr. Deleo opined, then he would be unable to work.

But the ALJ did not accept Dr. Deleo's findings. Rather, the ALJ gave "little weight" to Dr. Deleo's opinion, on the ground that Plaintiff's impairments "do not impose [the] massive level of limitation" that Dr. Delo described. AR 731. Typically, though, an ALJ should give "special weight" to a treating physician's opinions. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003) ("special weight is accorded opinions of the claimant's treating physician"); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances."). And if an ALJ discounts the treating physician's assessment, the ALJ must offer "good reasons" for doing so. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also consider the treatment relationship's length, nature, and extent, the

9

frequency of examination, the physician's specialty, the types of tests performed, and the opinion's consistency and supportability. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); 20 C.F.R. §§ 404.1527. Here, the ALJ discounted Dr. Deleo's opinion without addressing those factors.

Further, the ALJ found that Plaintiff would need to stand for only 5 minutes per hour after sitting down for the rest of the hour—a short enough amount of standing time to allow him still to perform satisfactorily in the jobs available to him, according to the vocational expert—without explaining how she reached that conclusion. The ALJ cited a "lack of evidence of any ongoing complaints of difficulty remaining seated" and pointed to Dr. Goldstein's testimony that Plaintiff "retains the residual functional capacity for sedentary work." AR 730. But in fact Dr. Goldstein opined that Plaintiff could *not* sit for even 2 hours out of an 8-hour workday and that Plaintiff is "less than sedentary" and cannot function for 8 hours per day. AR 789-90. And although Dr. Goldstein opined that Plaintiff's residual functional capacity was at least in part caused by the side effects of his medication and treatment, that qualification did not free the ALJ to ignore Dr. Goldstein's full opinion in assessing Plaintiff's residual functioning capacity. *Prate v. Colvin*, 69 F. Supp. 3d 868, 884 (N.D. Ill. 2014) ("[a] fundamental error [was] the ALJ's failure to consider the side effects of [claimant's] prescribed pain medications"); *Dorrance v. Colvin*, 2013 U.S. Dist. LEXIS 180638, *20 (N.D. Ind. Dec. 27, 2013) ("An RFC measures not only medically determinable impairments, but related symptoms, such as pain and the side effects of medication."). So the ALJ did not build the required "bridge" between the evidence and her conclusion regarding Plaintiff's RFC. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

## 2. The ALJ's credibility determination

The ALJ did not accept Plaintiff's headache allegations because they were "not consistent with the objective medical evidence." AR 730. The ALJ cited a lack of evidence of persistent pursuit of treatment and wrote that "the record is bereft" of ongoing headache complaints outside of the February 2007, June 2012, and May and June 2013 time periods. *Id*. But in fact the record shows that Plaintiff was hospitalized with a "persistent" and "severe" headache as early as October 2004. AR 307-14 ("He states that he has had headaches since approximately 13 years of age . . . . usually . . . throbbing, lasting for 2-3 hours . . . . He has continued to have these headaches for approximately 12 years up until [October 5, 2004] when upon awakening, he developed severe occipital pain, knife-like . . . . he continues to have nausea and vomiting and the headache is still severe."). Indeed, Judge Cherry's 2013 opinion describes Plaintiff's history of headaches at some length. AR 856-61 ("[I]n February 2003 . . . Dr. Michael Shaenboen . . . indicated that Plaintiff had . . . a history of migraine headaches triggered by stress . . . . On October 7, 2004, Plaintiff was treated at the emergency room for a severe migraine headache . . . . From November 2004 to December 2004, Plaintiff continued to be treated for migraine headaches . . . . In February 2007 . . . Plaintiff's final diagnosis included . . . migraine headaches . . . . On April 18, 2007, Dr. J. Smejkal . . . diagnosed Plaintiff as having . . . migraine headaches . . ."). Remand is proper where the ALJ misstates the medical evidence. *Golembiewski v. Barnhart*, 322 F.3d 912, 916-17 (7th Cir. 2003) (remanding where ALJ inaccurately described MRIs as showing "no herniations"); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) ("[t]he chief problem lies in the ALJ's mischaracterization of the medical evidence"); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (remanding due to ALJ's "erroneous statements"). Here, the

ALJ misstated the medical evidence with respect to Plaintiff's history of treatment for headaches, so remand is appropriate.

**III. Conclusion**

For the reasons above, the Court hereby **GRANTS** the relief requested in Plaintiff's Social Security Opening Brief [DE 15] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 3rd day of January, 2017.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record